UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| RANDY S. WETHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | Jury Demanded |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| SIR GOONY GOLF OF CHATTANOOGA, | ) | |
| INC., AMUSEMENT PRODUCTS, LLC., | ) | |
| and AMUSEMENT CONSTRUCTION | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

Comes Plaintiff Randy Wethington and sues Defendants for unlawful employment actions pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601 *et seq.* and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.* and as amended. Plaintiff would show unto the Court as follows:

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331, 29 U.S.C. §2617(a)(2), and 42 U.S.C. §12117.

2. The actions giving rise to this Complaint occurred in Hamilton County, Tennessee, and venue is proper in this district pursuant to 28 U.S.C. §1391.

## II. NATURE OF PROCEEDING

3. This is a proceeding for back pay; liquidated damages; reinstatement or front pay in lieu of reinstatement; the value of all employee benefits; compensatory damages; pre-judgment interest; attorney fees and costs; punitive damages; and for other damages as may be necessary to effectuate the purposes of the FMLA and the ADA.

## III. THE PARTIES

4. At all relevant times at issue in this lawsuit, Plaintiff was a resident of Hamilton County, Tennessee; was employed by Defendants in Hamilton County, Tennessee; and was an "eligible employee" within the provisions of the FMLA, namely 29 U.S.C. § 2611(2).

5. Defendant Sir Goony Golf of Chattanooga, Inc. ("Sir Goony's") is a Tennessee Corporation doing business in Hamilton County, Tennessee, and it is an "employer" within the meaning of, and it is subject to, the provisions of the FMLA, 29 U.S.C. § 2611(4) and the ADA, 42 U.S.C. § 12111(5)(a).

6. Defendant Amusement Products, LLC ("Amusement Products") is a Tennessee Limited Liability Company doing business in Hamilton County, Tennessee, and it is an "employer" within the meaning of, and it is subject to, the provisions of the FMLA, 29 U.S.C. § 2611(4) and the ADA, 42 U.S.C. § 12111(5)(a).

7. Defendant Amusement Construction Company, Inc. ("Amusement Contruction")(collectively, "Defendants") is a Tennessee Corporation doing business in Hamilton County, Tennessee, and it is an "employer" within the meaning of, and it is subject to, the provisions of the FMLA, 29 U.S.C. § 2611(4) and the ADA, 42 U.S.C. § 12111(5)(a).

8. Defendants, together, were Plaintiff's joint and/or integrated employers. Defendants have operated as a single employer and/or integrated enterprise. They share common ownership and common management. They have the same principal address and mailing address. They share centralized control of labor relations and personnel issues. Plaintiff routinely performed for and at the direction of all Defendants. Together, as a joint and/or integrated employer, Defendants have sufficient employees to be subject to the provisions of the FMLA, 29 U.S.C. § 2611(4) and the ADA, 42 U.S.C. § 12111(5)(a).

## IV. FACTUAL BASES OF PLAINTIFF'S CLAIMS

9. Plaintiff was employed by Defendants with the title of General Manager of Sir Goony's ("GM") from March 9, 2014 through October 22, 2019.

10. While employed, Plaintiff enjoyed great success as the GM and grew the business substantially.

11. During Plaintiff's employment, he consistently performed work for all Defendants, which were integrated in their operation. The Defendants shared the following joint and/or integrated operations:

   a. The business office for all Defendants was at 5954 Brainerd Road, Chattanooga. For example, see attached website posting (**Exhibit 1**) for "Sir Goony's Fun Zone." This is also the principal address for all three Defendants as indicated on the Tennessee Secretary of State website.

   b. All employment records for all employees of all Defendants were managed and maintained by Amusement Products.

   c. All human resources functions were conducted by Amusement Products and by Cindy Harrell, its Vice President.

   d. All insurance benefits, when they were maintained, were through Amusement Products.

   e. Sir Goony's is an amusement and recreation facility that contains go-karts and other amusement items. The go-karts were developed by Amusement Products. As part of Amusement Products' research and development ("R&D"), Plaintiff regularly undertook research and regularly furnished data and reports for use in the R&D process for Amusement Products. Indeed, Sir Goony's was the test facility for Amusement

3

Products to enter its products in the IAAPA, the global association for the attractions industry. As such, Amusement Products hosts IAAPA regularly conducts IAAPA seminars, including hands-on testing of attractions on location at its "FEC product test site" (referring to Sir Goony's). See **Exhibit 2**, website print of fecsuccess.com. This is also demonstrated on Amusement Products' online schedule for a training conducted in the fall of 2019, a portion of which was undertaken at Sir Goony's (See **Exhibit 3**) and Amusement Products' Facebook page (See **Exhibit 4**).

f. Defendants shared common ownership, management, and history. For example, see **Exhibit 5**, a timeline from Amusement Products' website showing the integrated history and management of Defendants.

g. During his employment, Plaintiff answered to Dutch Magrath ("Magrath"), the owner of Defendants, and also was required to keep Cindy Harrell ("Harrell"), the Vice President of Operations for all Defendants, in the loop concerning attendance and operational matters at Sir Goony's.

h. Defendants acted as one and exercised significant control over Plaintiff.

i. As such, Defendants are classified as joint and/or integrated employers under the ADA and FMLA, have a sufficient number of employees for coverage of those laws, and are jointly responsible as an integrated entity for the legal violations committed as alleged herein.

12. In November of 2018, Plaintiff's wife, Martina Wethington, was diagnosed with stage 4 colorectal cancer.

13. After participating in an initial course of unsuccessful chemotherapy, they were told that her condition was likely terminal and that she would have weeks or months left to live. At that time, Plaintiff's daughter was 4 years old.

14. From the time of diagnosis through the remainder of his employment, Plaintiff kept Magrath and Harrell aware of his wife's condition and his consequent need for time off to care for her.

15. Nobody at Defendants ever informed Plaintiff of his right to take FMLA leave.

16. In the beginning, Mr. Magrath did not seem to mind Plaintiff taking time off from work to assist with his wife's need for medical treatment. However, that changed as his wife's illness continued and as she did not pass away from it.

17. In the spring of 2019, Plaintiff and his wife were able to consult with renowned doctors at Memorial Sloan Kettering Cancer Center in New York City. Based upon the consultation, Plaintiff and his wife had hope that she could recover through a series of treatment that Memorial Sloan would conduct, including an initial surgery.

18. Magrath approved Plaintiff taking time off for the initial surgery. Matters changed, however, when Plaintiff returned to work on September 5, 2019 following the surgery.

19. Plaintiff later learned that Magrath had believed that his wife would probably not survive the surgery.

20. Plaintiff kept Magrath informed of his need for medical leave through email and, following the surgery, Magrath quit responding to Plaintiff's emails concerning his wife's condition.

21. Plaintiff was able to minimize the impact of his wife's treatment upon his work by scheduling her chemotherapy on Plaintiff off days and trying to have family caregivers sit with his wife on weekends during her chemotherapy recovery. Plaintiff planned well and his need to assist

his wife did not substantially impact the business and his work, other than that he needed to switch his days off and needed an additional three days off per month for treatments in New York City.

22. Sir Goony's is a very cyclical business. It is quite busy during the summer. When school resumes, it is open reduced hours and business decreases in the fall (when Plaintiff's wife's surgery occurred). The business slows significantly during the winter.

23. In the past, prior to winter, Plaintiff and Magrath would meet and confer about which employees to keep during the winter and which to lay off. Plaintiff has always worked the winter season, as the GM. Plaintiff had never been laid off or out of work during his employment with Defendants.

24. During the week of October 14, 2019, Plaintiff sent an email to Magrath as a prelude to their anticipated annual meeting to discuss who would stay employed over the winter and made suggestions of who should stay on the workforce with him.

25. On October 16, 2019, Plaintiff also sent an email to Magrath and Harrell reminding them of the three days he would need off per month from October through December for his wife's cancer treatment in New York.

26. Plaintiff's schedule could have easily been structured to permit for his time off with little to no impact upon the business operations, especially during the winter season.

27. On October 18, 2019, Magrath came to Plaintiff's office to talk. Magrath started the conversation by saying that he had a business to protect. He proceeded to tell Plaintiff that, in the spring, Plaintiff had told him that his wife's condition was "terminous." And that Magrath was willing to work with him then. Magrath then said that her treatment could go on for years and inferred that he could not deal with that. He then shifted and started criticizing Plaintiff's work (on the R&D side for Amusement Products), even though Plaintiff had worked there for six years with no discipline or

criticism. The two went outside to continue talking. Magrath was trying to get Plaintiff to quit his job, but Plaintiff said that he would not quit. Plaintiff told Magrath that if he was firing him, to do it honestly and not try and make it sound like Plaintiff had done something wrong. Magrath agreed and said he would give Plaintiff a letter of recommendation and severance pay for several weeks. Magrath then instructed Plaintiff to get his belongings and said he appreciated Plaintiff "understanding" what he had to do.

28. Magrath furnished Plaintiff with a Separation Notice and letter indicating that he had been an excellent manager and was being let go due to a business slowdown and lack of work.

29. Defendants' stated reason was pretext. Plaintiff was terminated from his position because of his wife's disability and his need for past and future medical leave to care for her.

30. Plaintiff has been damaged as a result.

31. Plaintiff's wife ended up passing away on November 20, 2019. Unfortunately, Plaintiff's last days with her were also marked with a fear for their family's future.

32. Defendants' owner and managerial agents who, individually or together, decided to terminate Plaintiff because of his wife's disability and his resulting need for medical leave acted intentionally with malice or with reckless indifference to the federally protected rights of Plaintiff.

33. Defendants' owner and managerial agents who, individually or together, decided to terminate Plaintiff because of his wife's disability and his resulting need for medical leave acted willfully in violating Plaintiff's federally protected rights.

### V. PLAINTIFF'S CLAIMS

<u>Interference with FMLA Rights</u>

34. At all times relevant, Plaintiff was an "eligible employee" as defined at 29 U.S.C. §2611(2).

35. At all times relevant, Defendants were "employers" or a joint and integrated employer as defined at 29 U.S.C. §2611(4)(A).

36. Plaintiff's wife suffered from a "serious health condition" as defined at 29 U.S.C. §2611(11) and 29 C.F.R. §825.115(c), inasmuch as her cancer constituted a "chronic serious health condition."

37. Defendants were made aware that Plaintiff's work absences in the relevant time frame qualified for FMLA leave.

38. Defendants denied Plaintiff entitlement to take FMLA leave for his work absences and as a direct result, Defendants terminated Plaintiff's employment.

39. In terminating Plaintiff for absences necessitated by his need to care for his wife due to her serious health condition, Defendants unlawfully interfered with Plaintiff's right to FMLA leave in violation of 29 U.S.C. §2615(a)(1) and violated Plaintiff's right to reinstatement, namely 29 U.S.C. §2614(a), upon his return from an FMLA-protected leave of absence.

40. Defendants are responsible for the acts of its owner and its supervisory agents.

41. Defendants' actions were willful inasmuch as Defendants' decisionmakers were aware that it is illegal to interfere with Plaintiff's exercise of his FMLA rights.

ADA Association Discrimination

42. At all times relevant herein, Plaintiff's wife was a qualified individual with a disability within the meaning of the ADA inasmuch as Plaintiff's wife had an actual disability (cancer) or a record of disability (history of cancer).

43. Plaintiff was qualified for his position with Defendants.

44. Plaintiff was subject to an adverse employment action—termination.

45. Plaintiff's termination occurred shortly after it was communicated that his wife needed additional treatment.

46. During the termination meeting, Magrath inferred that he could deal with Plaintiff's wife's disability when it appeared that it would be terminal in the spring of 2019. However, when she continued to survive and needed treatment into the fall, Magrath inferred that he could no longer put up with it.

47. Defendants then attempted to cover up that reason for Plaintiff's termination and have provided pretextual reasons for it after the fact. Indeed, prior to his termination, Plaintiff had no warning, discipline, or feedback that his performance was lacking in any way.

48. Upon information and belief, Defendants unlawfully believed that Plaintiff's wife's disability created an undue distraction on Plaintiff despite the fact that he was continuing to perform his job and could easily do so into the winter months.

49. As Plaintiff's wife continued to need treatment because her cancer was not terminal as quickly as was originally forecasted, Defendants resented Plaintiff's continued need to care for her.

50. Plaintiff's wife's disability did not create an undue distraction upon Plaintiff, inasmuch as he was able to continue performing his job, especially heading into the winter of 2019, while helping to care for her.

51. Further, to the extent that Defendants violated and interfered with rights that Plaintiff should have had under the FMLA, any such distraction was protected.

52. By discriminating against Plaintiff due to his wife's disability ("association discrimination") and terminating Plaintiff's employment for the same, Defendant violated the ADA, specifically 42 U.S.C. §12112(a) and (b)(4).

9

Case 1:20-cv-00234-DCLC-CHS   Document 1   Filed 08/20/20   Page 9 of 11   PageID #: 9

## VI. ADMINISTRATIVE EXHAUSTION

53. On or about December 12, 2019, Plaintiff filed three Charges of Discrimination with the Equal Employment Opportunity Commission (EEOC), which were assigned Charge Number 494-2020-00655, 00656, and 00657. On June 25, 2020, the EEOC issued Plaintiff three Notices of Right to Sue. Plaintiff brings this action within 90 days of the Notices of Right to Sue.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That the Court issue and serve process on Defendants and require Defendants to answer within the time prescribed by law;

b. That Plaintiff be awarded back pay damages and all lost benefits of employment;

c. That the Court issue an injunction requiring Defendants to re-employ Plaintiff at an equivalent job with all employment rights and benefits to which he would have been entitled but for his discharge, and without harassment or illegal condition imposed on his job, or, in the alternative, front pay and benefits in lieu of reinstatement;

d. That Plaintiff be awarded liquidated damages pursuant to the FMLA;

e. That Plaintiff be awarded compensatory damages pursuant to the ADA;

f. That Plaintiff be awarded punitive damages pursuant to the ADA;

g. Plaintiff be awarded pre-judgment interest;

h. That Plaintiff be awarded attorney fees and costs, and such other and further relief as the Court deems proper; and

i. That a jury try all claims and issues triable by a jury.

Respectfully submitted,

MIKEL & HAMILL PLLC


By: s/ *Donna J. Mikel*
 Donna J. Mikel, BPR#020777
 Attorney for Plaintiff
 620 Lindsay St., Suite 200
 Chattanooga, TN 37402
 (423) 541-5400
 dmikel@mhemploymentlaw.com